# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 13, 2011

No. 09-41247

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOSE ALVARO ACOSTA-GUERRERO,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:CR-1524-1

Before GARWOOD, GARZA, and DENNIS, Circuit Judges.

PER CURIAM:[*]

A jury convicted Defendant-Appellant Jose Alvaro Acosta-Guerrero ("Acosta") on one count of conspiracy to possess with intent to distribute in excess of fifty kilograms of marijuana and one count of possession with intent to distribute in excess of fifty kilograms of marijuana. Acosta appeals, arguing that the district court erred by admitting an expert witness's testimony and by denying his motion for acquittal. For reasons discussed within, we AFFIRM the district court.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-41247

I

In the early morning of June 16, 2009, the border patrol arrested Acosta at the border checkpoint on Interstate 35, about twenty-nine miles north of Laredo, Texas, shortly after agents discovered 94.35 kilograms of marijuana inside a tractor-trailer driven by Acosta for ATC Transport. The day before his arrest, Acosta had arrived at the ATC truck yard in Laredo, Texas, where he received paperwork and drove an empty trailer to a nearby warehouse where it was loaded with corn flour. When he returned to ATC with the load, the trailer was unsealed.[1] Acosta was supposed to leave Laredo that evening, but instead, he left Laredo about ten hours after his scheduled departure time. At trial, a former safety officer for ATC, Frederick Haverty, testified that he had arrived at ATC between 5 A.M. and 5:15 A.M. on June 16th and that Acosta arrived in his own car a few minutes later. The unsealed tractor-trailer filled with corn flour was parked nearby. Haverty testified that Acosta was in the ATC office for about twenty to thirty minutes. Acosta had concerns because the shipment's bill of lading did not match the manifest and the trailer lacked a seal. Haverty told Acosta to talk to a dispatch official who would arrive later. But instead of waiting, Acosta left ATC with the trailer.

An hour after his departure from ATC, Acosta stopped the trailer at the border checkpoint. A border patrol agent testified that Acosta's 7 A.M. arrival was significant because agents change shifts then. Due to the confusion with the shift changes, 7 A.M. "tends to be the time where they [drug traffickers] try to push the narcotics through." A border patrol detection dog alerted agents to possible contraband in Acosta's trailer, which was now sealed shut. After an x-ray scan, an agent broke the trailer's seal and discovered marijuana in a cardboard box and duffel bags.

---

[1] A "seal" refers to an individually numbered plastic band that is latched around the doors to prevent tampering with the trailer's load.

No. 09-41247

An indictment charged Acosta with conspiring to possess with intent to distribute in excess of fifty kilograms of marijuana and possessing with intent to distribute in excess of fifty kilograms of marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C).  Acosta pleaded not guilty to both charges.  Before trial, Acosta moved to exclude expert testimony concerning the marijuana's monetary value in Laredo and Jackson, Mississippi, the metropolitan area closest to Acosta's final destination.  At the close of the Government's case and during closing arguments Acosta moved for an acquittal on both counts.  The district court denied the motions and the jury convicted Acosta.  He appealed his conviction to us.

II

Acosta argues that the district court erred by denying his motion for judgment of acquittal because the Government failed to produce sufficient evidence to establish that Acosta knowingly possessed the marijuana.

We review the district court's denial of Acosta's motion for acquittal de novo.  *United States v. Floyd*, 343 F.3d 363, 370 (5th Cir. 2003). We will affirm the jury's verdict if "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. 1982) (en banc).  The evidence and all reasonable inferences drawn from it are to be viewed on appeal in the light most favorable to the government. *Id.*  "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." *United States v. Ortega Reyna*, 148 F.3d 540, 543 (5th Cir. 1998) (internal quotations and citations omitted).  A violation of 21 U.S.C. § 841(a)(1) is shown by proof of knowing possession of contraband with intent to distribute. *United States v. Skipper*, 74 F.3d 608, 611 (5th Cir. 1996).  A conspiracy conviction requires proof "beyond a reasonable doubt that [the defendant] had the deliberate, knowing,

3

specific intent to join the conspiracy." *United States v. Mendoza*, 722 F.2d 96, 103 (5th Cir. 1983) (internal quotation marks and citation omitted).

If drugs are found concealed in a vehicle, control of the vehicle alone is not basis enough to prove knowledge on the part of the person controlling it. *United States v. Garza*, 990 F.2d 171, 174 (5th Cir. 1993). Thus, in such circumstances there must exist other evidence that is suspicious or demonstrates guilt. *United States v. Moreno*, 185 F.3d 465, 471–72 (5th Cir. 1999). For cases in which the value of contraband is high, a jury may reasonably infer that a defendant "would not have been entrusted with [such] extremely valuable cargo if he was not part of the drug trafficking scheme." *United States v. Villarreal*, 324 F.3d 319, 324 (5th Cir. 2003). We have held that a drug smuggler is unlikely to entrust valuable quantities of drugs to an unknowing driver who might deliver them to the authorities or attempt to profit from them himself. *Villarreal*, 324 F.3d at 324–25.

The Government presented evidence that showed Acosta unexpectedly delayed his departure from ATC by ten hours. The evidence also demonstrated that Acosta's tractor-trailer was unsealed when it left the trucking yard, but when border patrol agents stopped the trailer an hour later, it was sealed shut. Acosta departed from ATC about 6 A.M. and it took him at least an hour to reach a border patrol stop twenty-nine miles away. During that time, Acosta had sole possession and control of the tractor-trailer. In addition, the marijuana found in Acosta's trailer had a street value between, $124,542 and $207,570 at his final destination of Brookhaven, Mississippi. The marijuana's value permitted for the reasonable inference that Acosta would not have been entrusted with the valuable cargo unless he was part of the drug conspiracy. *Villarreal*, 324 F.3d at 324. The district court did not err in denying Acosta's motion for acquittal because "a reasonable trier of fact could find that the evidence" established that Acosta knowingly possessed the marijuana. *Bell*, 678 F.2d at 549.

No. 09-41247

Acosta also contends that the district court erred by admitting a DEA agent's testimony about the monetary value of the marijuana. We consider the district court's evidentiary rulings under an abuse of discretion standard. *United States v. Gutierrez-Farias*, 294 F.3d 657, 662 (5th Cir. 2002). If the decision to admit expert testimony constitutes an abuse of discretion we will not reverse the trial court if the error was harmless. *United States v. Williams*, 957 F.2d 1238, 1241 (5th Cir. 1992). Such an error is harmless if there is no "reasonable possibility that the improperly admitted evidence contributed to the conviction." *Gutierrez-Farias,* 294 F.3d at 664 (internal quotations omitted).

Acosta argues that the DEA agent's testimony substantially prejudiced him because "it attempted to link him to the specific characteristics of drug couriers as well as to the drug trafficking industry." We have held that testimony offering a profile of drug couriers is inherently prejudicial and inadmissible to prove guilt. *United States v. Ibarra*, 493 F.3d 526, 532 (5th Cir. 2007). The trial transcript belies Acosta's assertion. The DEA agent testified about his work experience, how he determined the value of the drugs seized from Acosta's trailer, and why the value of drugs increases as one travels north. The Government did not ask the agent to comment on Acosta's guilt nor did the agent state whether Acosta fit the profile of a drug smuggler. The district court did not err by admitting this evidence.[2]

### III

We AFFIRM the district court's judgment.

---

[2] Acosta also asserts that under Rule 403 of the Federal Rules of Evidence, the district court erred by permitting the DEA agent to testify because this evidence's probative value was substantially outweighed by the danger unfair prejudice to Acosta. This argument fails, however, because as noted in Section II, our precedent permits for the Government to rely on the testimony of law enforcement officials to establish the monetary value of drugs to demonstrate a defendant's knowledge. *United States v. Sanchez-Hernandez*, 507 F.3d 826, 832 (5th Cir. 2007); *Villarreal*, 324 F.3d at 324.